# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RUSSELL AUGUILLARD (#347039)**  **CIVIL ACTION**

**VERSUS**

**DR. PAUL TOCE, ET AL.**  **NO. 14-0394-JJB-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 3, 2015.

                    **RICHARD L. BOURGEOIS, JR.**
                    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RUSSELL AUGUILLARD (#347039)**     CIVIL ACTION

**VERSUS**

**DR. PAUL TOCE, ET AL.**     NO. 14-0394-JJB-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motions to Dismiss of defendants Paul Toce, Stephanie Lemartiniere, James LeBlanc, Chadwick Hardy, Mary Labatu, TeQuilla Parker, Morris Smith and Patricia Simmons (R. Docs. 23 and 42). These motions are opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Paul Toce and Ass't Warden Stephanie Lamartiniere, complaining that his constitutional rights were violated, commencing in November, 2013, through deliberate indifference to his serious medical needs. Specifically, the plaintiff complains that in November, 2013, he was seen by defendant Dr. Toce, at which time the defendant declined to refer the plaintiff for an appointment with a specialist to address the plaintiff's alleged continuing complaints of back pain. The plaintiff further complains that although Dr. Toce advised the plaintiff on that date that an alternative pain medication would be prescribed for him, the plaintiff never received the prescribed medication. Finally, the plaintiff complains that his attempts at obtaining redress through the prison grievance process have been unsuccessful. Pursuant to an amendment to his Complaint, *see* R. Docs. 18 and 37, the plaintiff added as defendants herein Secretary James LeBlanc, LSP pharmacist Mary Labatu, and LSP pharmacy personnel Lt. Chadwick Hardy, Sgt. Morris Smith, Patricia Simmons and TeQuilla

Parker, asserting a claim regarding the failure of the pharmacy department to provide the prescribed medication.

In the instant Motions, the defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim asserted against them in their official capacities for monetary damages.[1]  In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id.* at 25.  Accordingly, the plaintiff's claim asserted against the defendants in their official capacities for monetary damages is subject to dismissal.  In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

With regard to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the

---

1. In his Amended Complaint (R. Doc. 18), the plaintiff specifically stated that he is suing defendant James LeBlanc in both an individual and an official capacity.  As to the remaining defendants, however, it is unclear from the plaintiff's pleadings in which capacity he has sued them.  Notwithstanding, the Court interprets the pleadings of *pro se* petitioners liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Accordingly, the Court will interpret the plaintiff's Complaint, as amended, as naming the defendants in both capacities.

Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that on November 14, 2013, he was examined by defendant Dr. Paul Toce for complaints relative to alleged continuing back pain, at which time the plaintiff advised the defendant that the plaintiff was not receiving adequate treatment by the LSP medical department. According to the plaintiff, Dr. Toce responded by stating that a review of the plaintiff's x-rays did in fact reveal that the plaintiff's spine was "not normal." Dr. Toce declined, however, to refer the plaintiff for an evaluation by an outside specialist, allegedly stating that if the plaintiff wanted better medical treatment, the plaintiff would need to obtain it after a release from LSP. Notwithstanding, the plaintiff acknowledges that Dr. Toce advised the plaintiff at that time that the defendant would order a new medication, "Mobic," for the plaintiff's complaints and that the plaintiff's then-prescribed medication, "IBU" (presumably Ibuprofen), would be discontinued. The plaintiff asserts, however, that he was never provided with the prescribed "Mobic" and, instead, for a period of approximately six (6) months, until May, 2014, he continued to receive the "IBU" that defendant Toce had indicated would be discontinued. The plaintiff also asserts that, when he complained to prison officials regarding the problem with his medication and treatment, through correspondence and through the filing of an administrative grievance, his complaints were not properly investigated or resolved. Finally, the plaintiff complains that the LSP pharmacist, defendant Mary Labatu, and other LSP pharmacy personnel who are charged with filling prescriptions and dispensing medication to inmates, have not been properly trained in the handling of inmates' medications and, as a result, failed to ensure that he received the medication ordered by Dr. Toce.

In addressing the substance of the plaintiff's claims, the defendants first assert that the plaintiff has failed to adequately allege the personal involvement of certain of the defendants in the events of which the plaintiff complains. In this regard, in order for a prison official to be

found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard in connection with the plaintiff's claims, the Court concludes that, with the exception of defendant Toce, the plaintiff has failed to sufficiently allege that any defendant has been personally involved in conduct that may be characterized as a violation of the plaintiff's constitutional rights. First, with regard to defendants James LeBlanc and Stephanie Lamartiniere, the plaintiff's allegations make clear that these defendants are supervisory employees who do not have personal responsibility for providing medical care to the plaintiff. Specifically, as the Secretary of the Louisiana Department of Corrections and as the Assistant Warden of Health Services at LSP, respectively, these defendants are neither physicians

nor qualified health care providers, and they are neither authorized to provide medical care nor generally capable of evaluating the care provided or the discretion exercised by competent physicians. At most, the plaintiff alleges that these defendants are charged with "remedy[ing] any unconstitutional conditions" or "address[ing] any sort of problems" with the provision of medical care at the penitentiary. These allegations of supervisory responsibility, however, do not meet the requirement that the defendants be directly and personally involved in the constitutional deprivations alleged. Further, prison officials who are not trained health care providers are generally entitled to rely upon the expertise of competent medical personnel in evaluating the medical needs of inmates. *See Huff v. Thaler*, 2012 WL 2120569, *9 (S.D. Tex. May 1, 2012). *See also Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (noting that supervisory officials are entitled to rely on the expertise and medical judgment of prison physicians); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (concluding that because the prison warden and medical administrator "lacked medical expertise," they could not be found liable for a failure by prison medical staff to refer the plaintiff to see a physician). Moreover, although the plaintiff alleges that he brought his complaints to the attention of defendants LeBlanc and Lamartiniere, through correspondence and through the filing of an administrative grievance, and that the defendants did not investigate or remedy his concerns, the law is clear that a mere failure to investigate or respond to an inmate's requests or administrative grievances is not a basis for liability under § 1983. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). To the contrary, the plaintiff has no constitutional right to an investigation or to a favorable response to his written complaints or grievances, and there is no due process right inherent in such a claim. *Id.* Here, therefore, the plaintiff has failed to factually allege that defendants LeBlanc and Lamartiniere have had any direct or personal involvement in his medical care or in a

determination regarding his appropriate treatment or medication. Accordingly, in the absence of any allegation suggesting such direct involvement, these supervisory defendants are entitled to judgment as a matter of law.

Similarly, whereas the plaintiff has named pharmacist Mary Labatu and other LSP pharmacy personnel as defendants herein, the plaintiff has failed to allege facts sufficient to support a conclusion that any of these defendants were deliberately indifferent to the plaintiff's serious medical needs. All that the plaintiff has alleged relative to these defendants is that the defendant pharmacist was "responsible for filling prescribed ... medication order[s] by Dr. Paul Toce," and that the pharmacy defendants nonetheless "provided incorrect medication" to the plaintiff. The plaintiff does not allege, however, that any of these defendants intended to cause the plaintiff harm, were consciously or callously indifferent to his medical needs, or were personally aware that a mistake had been made in the plaintiff's medication. To the contrary, it appears likely from the plaintiff's allegations that his failure to receive the medication ordered by Dr. Toce ("Mobic") and his continued receipt of the previously prescribed medication ("IBU"), that was supposed to be discontinued, were the result of mere negligence or inadvertence on the part of LSP medical personnel and, as noted above, claims of mere negligence or inadvertence do not rise to the level of deliberate medical indifference and are not actionable under § 1983. Thus, the plaintiff has not shown through his allegations that there is any legal or factual basis for his claim asserted against the LSP pharmacy personnel, and these defendants are entitled to dismissal of the plaintiff's claims asserted against them.[2]

---

2. Both the plaintiff's Complaint and the memoranda filed in opposition to the defendants' motions also include conclusory assertions, unsupported by any factual development, that LSP pharmacy personnel are not adequately trained and are unqualified in the handling and dispensing of medications, that prison officials have failed to follow prison rules regarding the requirement that inmates sign for the receipt of prescribed medications, and that there are systemic deficiencies in the medication delivery system and policies at LSP. These

Finally, turning to a consideration of the plaintiff's claim asserted against the remaining defendant, Dr. Paul Toce, the Court will address the defendant's contention that he is entitled to qualified immunity in connection with the plaintiff's claim. Specifically, the defendant contends that the plaintiff has failed to allege facts sufficient to support a "reasonable inference," greater than a "mere possibility," that the defendant has violated the plaintiff's constitutional rights through deliberate indifference to the plaintiff's serious medical needs. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678-79.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established at the time that the violation occurred. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would

---

conclusory assertions, however, unsupported by any factual allegations, do not support a claim for relief in this case. *See, e.g., Bohannan v. Doe*, 527 Fed. Appx. 283, 300 (5th Cir. 2013) (upholding the dismissal of an inmate's failure-to-train claim in the absence of an alleged pattern of wrongful behavior independent of the plaintiff's individual claims); *Jackson v. Cain*, 864 F.2d 1235, 1353 (5th Cir. 1989) (noting that a mere violation of prison rules or regulations is not actionable under §1983); and *Ashcroft v. Iqbal, supra*, 556 U.S. at 681 (finding that conclusory allegations of the existence of a wrongful policy are "not entitled to be assumed true" in connection with a motion to dismiss). To the contrary, the plaintiff's claim in this case relates principally to the decision by defendant Toce not to refer the plaintiff for an evaluation by a specialist and to an apparent error or mis-communication in the delivery of prescribed medication to the plaintiff over a six-month period.

have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202.[3]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the motion to dismiss should be granted. Specifically, the Court concludes that the plaintiff has failed to state a viable constitutional claim of deliberate medical indifference in connection with defendant Dr. Toce.

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra.* Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints,

---

3. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing principles, it is clear that the plaintiff has failed to allege facts sufficient to support a claim of deliberate medical indifference on the part of defendant Dr. Toce. Specifically, the plaintiff refers in his Complaint only to a single interaction with Dr. Toce in November, 2013, on which date the defendant Toce admittedly examined the plaintiff, evaluated the plaintiff's symptoms, reviewed the plaintiff's x-rays, and prescribed substitute medication for the plaintiff's complaints. Although the plaintiff complains that he did not thereafter receive the substituted medication, and instead continued to receive the originally prescribed medication, there is nothing in the record to indicate that defendant Toce had any reason to know or suspect that the new medication had not been provided by LSP pharmacy personnel. Further, although the plaintiff complains that the defendant failed or refused to refer the plaintiff for an evaluation by a neurologist or orthopedic specialist, a decision to refer an inmate for additional treatment, tests or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference. *See Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009) (upholding the dismissal of an inmate's claim as frivolous where he complained of a failure to refer him to a specialist, noting that "the question whether 'additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,'" *quoting Estelle v. Gamble, supra*, 429 U.S. at 107); *Burge v.*

*Stalder*, 54 Fed. Appx. 793 (5th Cir. 2002) (upholding the grant of a motion to dismiss where the inmate complained of a failure to refer him to a specialist); *Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986) (stating that a "mere claim that [the plaintiff] was not afforded a doctor who specialized in the treatment of paraplegia or a trained physical therapist does not, of itself, state a claim of deliberate indifference"). *See also Corte v. Schaffer*, 24 F.3d 237 (5th Cir. 1994) (concluding that, contrary to the plaintiff's allegation that he had received "no treatment" and that he needed a referral to a specialist, he had failed to demonstrate deliberate indifference where he had been seen by prison medical personnel and where his test results were within a normal range). Accordingly, although the plaintiff is apparently dissatisfied with the medical care that he has received at LSP, such dissatisfaction does not support a claim of deliberate medical indifference. Therefore, the Court finds that the plaintiff has failed to adequately state a claim against defendant Toce and that the defendant is entitled to judgment as a matter of law, dismissing the plaintiff's claims asserted herein.[4]

---

4. Although not essential to the Court's decision in his case, the Court notes that the plaintiff has referred in his Complaint to his pertinent administrative remedy proceedings and to his medical records as "exhibits" and has invited the Court to review these records in support of his claim. *See* R. Doc. 1-1. Although a motion to dismiss brought pursuant to Rule 12(b)(6) normally tests the sufficiency of a plaintiff's well-pleaded allegations and does not include an examination of documentation or other evidence, *see Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2000), the Court may consider documents attached to a plaintiff's Complaint, *id.,* "documents incorporated into the complaint by reference," *id.,* and documents subsequently filed by a *pro se* plaintiff, *Howard v. King*, 707 F.2d 215 (5th Cir. 1983). Upon a review of the plaintiffs administrative remedy proceedings in this case, a certified copy of which has been filed into the record by the defendants, *see* R. Doc. 16, and upon a review of excerpts from the plaintiff's records that are contained therein, it appears that the plaintiff has in fact received medical attention for complaints relative to back and neck pain at LSP. Specifically, prior to his visit of November 14, 2013, he was seen by medical personnel on June 20, 2012, December 4 and 10, 2012, and July 15, 2013. In December, 2012, he had no objective muscle spasms, his limited range of motion appeared to be exaggerated, and his x-rays disclosed only minimal degenerative joint disease. *See* R. Doc. 16-1 at p. 23. He was nonetheless prescribed medication, Naproxen, at that time. In July, 2013, the plaintiff reported that his neck was "doing ok," and his medication was changed from Naproxen to "Ibu[profen]." *See id.* at p. 17. An x-

To the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having considered the allegations of the plaintiff's Complaint and having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims and that the defendants' Motions to Dismiss (R. Docs. 23 and 42) be granted, dismissing the plaintiff's claims asserted herein, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 3, 2015.

                                                          **RICHARD L. BOURGEOIS, JR.**
                                                          **UNITED STATES MAGISTRATE JUDGE**

---

ray of the plaintiff's cervical spine was thereafter undertaken in August, 2013, and was interpreted to be a "normal study." *See id.* at p. 19. Finally, in November, 2013, the plaintiff was evaluated by Dr. Toce as alleged in the Complaint. The medical report generated in connection with that visit indicates that, whereas the possibility of a referral for a neuro[logical] consultation was considered, the defendant declined to do so, at least in part because the plaintiff's reported symptoms were "not convincing." *See id.* at p. 14.